**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| REACH COUNSELING SERVICES, | ) | CASE NO. 1:15CV2351 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| vs. | ) | **OPINION AND ORDER** |
| | ) | |
| CITY OF BEDFORD, OHIO, | ) | |
| | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J.**:

This matter comes before the Court upon the Motion (ECF DKT #72) of Defendant City of Bedford for Summary Judgment and the Motion (ECF DKT #80) of Plaintiff REACH Counseling Services for Partial Summary Judgment as to Liability. For the following reasons, Defendant's Motion is granted in part and Plaintiff's Motion is denied.

**I. BACKGROUND**

Plaintiff, REACH Counseling Services ("REACH"), is a non-profit corporation licensed by the Ohio Department of Mental Health and Addiction Services ("OMHAS"). REACH provides housing, supervision, counseling and twenty-four-hour personal care services to disabled children in a family-style setting. REACH partnered with Education

Alternatives, another non-profit corporation that assists disabled children, and applied to the City of Bedford to operate a Type I group home at 314 Union Street, Bedford, Ohio. REACH filed a conditional use application. Bedford's City Council rejected the application for conditional use because Bedford's Ordinance 1915.24 provided that a group home cannot be located within "500 yards" of a "local School, Library or another group home."

On May 12, 2015, Bedford granted REACH a reasonable accommodation for a conditional use of the Union Street Home in a zoning-group R-2 residential area, with the caveat that REACH comply with the requirements of the Building, Fire and Engineering Departments.

Bedford further advised REACH that the City would issue a Certificate of Occupancy under the Residential Code for no more than five residents.

REACH sought to increase the occupancy from five residents to seven. Pursuant to the Ohio Commercial Code, once a group home has six to sixteen occupants, the group home must install a fire suppression system that meets the requirements of the Ohio Fire Code. Ohio Administrative Code, Chapter 4101:1-3-01, 310. Bedford consequently denied a Certificate of Occupancy for seven residents in the Union Street Home because it lacked the automatic sprinkler system required by the more stringent Ohio Commercial Building Code.

Because the OMHAS licensing of the Union Street Home was at risk, REACH amended its application for a Certificate of Occupancy to a request for five persons; even though, to be financially viable, REACH requires seven children live at the Union Street Home.

REACH appealed the denial of the Certificate of Occupancy for seven persons to the

Planning Commission and requested that Bedford grant a reasonable accommodation pursuant to the fair housing laws of the United States and Ohio to permit seven children to reside at the Union Street Home and to operate under the Ohio Residential Code. On November 12, 2015, REACH's appeal was denied. REACH's request for reasonable accommodation was also denied. Following the denial, this lawsuit was filed on November 17, 2015.

REACH sought additional review from the Ohio Board of Building Appeals in early 2016. REACH argued the significant financial burden of complying with the Ohio Building Code, mandating the installation of a costly fire suppression system which would otherwise not be required of single-family homes with seven occupants. Bedford indicated that it would not oppose REACH's request before the Board, but claimed that it lacked the authority to make the reasonable accommodation requested.

On April 11, 2016, REACH made a second accommodation request that a Certificate of Occupancy be granted for seven children, if at all times at least two of the children were related. REACH argued that this arrangement would fall under the Ohio Residential Code.

On April 13, 2016, the Board upheld Bedford's Building Commissioner's decision denying the Certificate of Occupancy for seven residents.

On April 27, 2016, REACH's partner, Education Alternatives, filed an administrative appeal with the Cuyahoga County Common Pleas Court, appealing the decision of the Board of Building Appeals. (Case No. CV-16-862467). The appeal set forth two Assignments of Error:

> (1) The Board of Building Appeals erred by refusing to grant Plaintiff Education Alternatives a reasonable accommodation, in the form of a variance exempting the property located at 314 Union Street, Bedford, Ohio, from the need for an automatic sprinkler system, in violation of the federal and Ohio

Fair Housing laws, and (2) The Board of Building Appeals erred in its interpretation and application of the Use and Classification of the Ohio Building Code by refusing to classify the property located [sic] 314 Union Street, Bedford, Ohio, as a single family dwelling.

The Cuyahoga County Common Pleas Court affirmed, finding the decision of the Board was supported by reliable, probative and substantial evidence and was in accordance with the law.

The current operative Complaint is the Second Amended Complaint (ECF DKT #49). REACH alleges that Bedford's Zoning Ordinances and Building Codes discriminate against disabled individuals, preventing them and their housing providers from living where they choose and enjoying the same use of their property experienced by non-disabled City residents. Bedford's application of its Building Codes is unlawfully restrictive and operates to force REACH (and the disabled population it serves) out of the City. REACH claims to have suffered irreparable injury, lost income and damage to its goodwill. REACH seeks injunctive relief, declaratory judgment and damages for violations of the federal Fair Housing Act and Ohio's Fair Housing Act and constitutional violations under 42 U.S.C. § 1983.

Specifically, REACH seeks judgment on five claims:

• Bedford made discriminatory statements that indicate a preference for non-disabled residents and a limitation on disabled residents.

• Bedford refused to grant REACH reasonable accommodations that would allow seven disabled children to live at 314 Union Street ("Vincent House").

• Bedford intentionally discriminated against REACH on the basis of disability through a pattern of conduct designed to interfere with REACH's efforts to operate a home for disabled children in Bedford.

-4-

• As enacted in 2014, Bedford's Group Home Ordinance violated the law and caused harm to REACH.

• Bedford's current Group Home Ordinance continues to violate the law and cause harm to REACH.

Bedford moves for summary judgment on REACH's claims, arguing that REACH lacks standing because its alleged injury is not fairly traceable to Bedford; REACH's claims are barred by res judicata; and REACH's discrimination claims fails since REACH cannot provide evidence of discriminatory purpose in Bedford's conduct.

REACH moves for partial summary judgment as to liability and believes the remaining trial issues would be REACH's intentional discrimination claims and the amount of damages.

## II. LAW AND ANALYSIS

**Standard of Review**

Summary judgment shall be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed.R.Civ.P. 56(a). The burden is on the moving party to conclusively show no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy. Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). The moving party must either point to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials" or show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce

admissible evidence to support the fact." *See* Fed.R.Civ.P. 56(c)(1)(A), (B). A court considering a motion for summary judgment must view the facts and all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Once the movant presents evidence to meet its burden, the nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim. *Celotex*, 477 U.S. at 324; *Lansing Dairy*, 39 F.3d at 1347.

This Court does not have the responsibility to search the record *sua sponte* for genuine issues of material fact. *Betkerur v. Aultman Hospital Ass'n.*, 78 F.3d 1079, 1087 (6th Cir. 1996); *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404-06 (6th Cir. 1992). The burden falls upon the nonmoving party to "designate specific facts or evidence in dispute," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); and if the nonmoving party fails to make the necessary showing on an element upon which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

**Standing as to Reasonable Accommodation Fair Housing Claims**

REACH is licensed by OMHAS to operate a Type I group home at 314 Union Street, Bedford, Ohio and REACH applied for a conditional use permit to operate the group home in a residential area.

The Ohio Building Code permits a group home with five or fewer residents to comply with the Ohio Residential Code. Once there are between six and sixteen occupants, the group home must install a fire suppression system that meets the Ohio Commercial Code and the Ohio Fire Code.

REACH asks for an accommodation because the children in their group home will live like a family in a family-like setting; so the group home should be regulated by the Ohio Residential Code as any other family residence in the City of Bedford.

Bedford counters that group homes are regulated by the Ohio Building Code. Any decision that would allow a group home with six to sixteen occupants to be governed by the Ohio Residential Code would be considered a variance from the Ohio Building Code. Bedford has no authority to grant a variance or accommodation from the Ohio Building Code.

Pursuant to R.C. § 3781.10(A), the Board of Building Standards formulates and adopts rules and standards for erection, construction, repair, alteration and maintenance of all buildings in the State of Ohio, and incorporates the rules into separate residential and nonresidential building codes. "The rules governing nonresidential buildings are the lawful minimum requirements specified for those buildings..." R.C. § 3781.10(A)(2). It is undisputed that local authorities **may not** adopt standards less stringent than the Ohio Basic Building Code. *Middleburg Hts. v. Ohio Bd. of Bldg. Standards*, 65 Ohio St.3d 510, 513 (1992).

Even though the Fair Housing Act (42 U.S.C. § 3615) invalidates any law of a state or political subdivision that "purports to require or permit any action that would be a discriminatory housing practice," Bedford's inability to deviate from the Ohio Building Code

is not a violation of the Fair Housing Act. See *Larkin v. State of Mich. Dept. of Social Services*, 89 F.3d 285, 288 (6th Cir. 1996) (noting that City of Westland did not violate the Fair Housing Act because it lacked the authority to waive a 1500-foot spacing requirement under Michigan law).

Plaintiff REACH bears the burden of establishing standing on all of its claims and most pertinently, on the claim that Bedford refused to grant REACH reasonable accommodations that would allow seven disabled children to live at 314 Union Street ("Vincent House"). *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

"To satisfy Article III's standing requirements, a plaintiff must show: '(1) [he] has suffered an 'injury-in-fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Soehnlen v. Fleet Owners Ins. Fund,* 844 F.3d 576, 581 (6th Cir. 2016); *Loren* v. *Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 606–07 (6th Cir. 2007); *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180–81(2000). "For an injury to be particularized, 'it must affect the plaintiff in a personal and individual way.'" *Soehnlen,* 844 F.3d at 581-82; *see also Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982) (standing requires that the plaintiff "personally has suffered some actual or threatened injury"). As to the second and third requirements, the federal court cannot redress injuries unless a plaintiff has established a causal relationship between the injury and the challenged conduct, so that the injuries can fairly be traced to the challenged action of the defendant, and not the result of the independent

action of some third party not before the court. *See Vermont Agency of Natural Res. v. United States ex rel. Stevens,* 529 U.S. 765, 771 (2000); *Crawford v. United States Dept. of the Treasury*, 868 F.3d 438, 455-56 (6th Cir. 2017).

If Bedford were to grant a conditional use for the Union Street Home, allowing occupancy for seven occupants without the requirement of a fire suppression system, the City would be unlawfully adopting a standard less stringent than the Ohio Building Code. Since the State of Ohio promulgated the rules and standards which are the cause of REACH's alleged injuries, REACH's injuries cannot be fairly traced to Bedford's conduct.

The State of Ohio is not a party to this litigation. Bedford has no ability to ease the rules and standards governing group homes in Ohio. Therefore, REACH has failed to satisfy the causation and redressability elements of Article III standing. Bedford is entitled to summary judgment in its favor on the Reasonable Accommodation Fair Housing Claims in REACH's Second Amended Complaint.

**Discriminatory Statements under 42 U.S.C. § 3604(c) and R.C. 4112.02(H)(7)**

REACH alleges that Bedford has made discriminatory statements, in its ordinances and through its officials and employees, indicating its preference for non-disabled residents and placing limitations on disabled residents:

(1). The 2014-2017 version of the Bedford Group Home Ordinance recites that a group home is not permitted within a 500-yard radius of a local school, library or another group home.

(2). Assistant Fire Chief Shawn Solar spoke at the Board of Building Appeals Hearing and said: " I know for a fact that there was a child from Education Alternatives who

twice on the way to school tried lighting a taxi on fire because they had a lighter." He also commented that these are "troubled kids" and fire safety issues are not limited to whether REACH occupants could physically flee a burning building, but include fire prevention as well.

(3). In a May 6, 2015 letter, Law Director John Montello informed REACH that the City was granting the conditional use application and waiving the radius restriction, but was requiring REACH to inform the City about any future plans for group homes and to abide by the radius restriction in the future. (ECF DKT #76-1 at 79).

Pursuant to 42 U.S.C. § 3604(c), persons are prohibited from making or publishing statements or advertisements with respect to the sale or rental of a dwelling that "indicates any preference, limitation, or discrimination based on . . . handicap . . . or an intention to make any such preference, limitation, or discrimination. Likewise, R.C. § 4142.02(H)(7) provides that it is an unlawful discriminatory practice for any person to "[p]rint, publish, or circulate any statement or advertisement, or make or cause to be made any statement or advertisement, relating to the sale, transfer, assignment, rental, lease, sublease, or acquisition of any housing accommodations, . . . , that indicates any preference, limitation, specification or discrimination based upon . . .disability .. .or an intention to make any such preference, limitation, specification , or discrimination."

The Court will consider REACH's federal and state claims together because Ohio courts interpret the state statute under analogous federal law. *Ohio Civil Rights Comm'n v. Harlett*, 132 Ohio App.3d 341 (1999).

To maintain a claim under § 3604(c), a plaintiff must prove that (1) the defendant

twice on the way to school tried lighting a taxi on fire because they had a lighter." He also commented that these are "troubled kids" and fire safety issues are not limited to whether REACH occupants could physically flee a burning building, but include fire prevention as well.

(3). In a May 6, 2015 letter, Law Director John Montello informed REACH that the City was granting the conditional use application and waiving the radius restriction, but was requiring REACH to inform the City about any future plans for group homes and to abide by the radius restriction in the future. (ECF DKT #76-1 at 79).

Pursuant to 42 U.S.C. § 3604(c), persons are prohibited from making or publishing statements or advertisements with respect to the sale or rental of a dwelling that "indicates any preference, limitation, or discrimination based on . . . handicap . . . or an intention to make any such preference, limitation, or discrimination. Likewise, R.C. § 4142.02(H)(7) provides that it is an unlawful discriminatory practice for any person to "[p]rint, publish, or circulate any statement or advertisement, or make or cause to be made any statement or advertisement, relating to the sale, transfer, assignment, rental, lease, sublease, or acquisition of any housing accommodations, . . . , that indicates any preference, limitation, specification or discrimination based upon . . .disability .. .or an intention to make any such preference, limitation, specification , or discrimination."

The Court will consider REACH's federal and state claims together because Ohio courts interpret the state statute under analogous federal law. *Ohio Civil Rights Comm'n v. Harlett*, 132 Ohio App.3d 341 (1999).

To maintain a claim under § 3604(c), a plaintiff must prove that (1) the defendant

made a statement, (2) the statement was made with respect to the sale or rental of a dwelling, and (3) the statement indicates a preference, or limitation, or discrimination based on a protected class. See *Campbell v. Robb*, 162 F.App'x 460, 466-67 (6th Cir. 2006). The challenged discriminatory statement can be oral or in writing. *Id*. at 466.

Bedford does not dispute the statements were made in the ordinance and by the Law Director and the Assistant Fire Chief. However, Bedford does assert that the City is not the owner, landlord, realtor or property manager of 314 Union Street. Moreover, Bedford argues that the statements were unrelated to the decision to sell or rent the Union Street Home.

"The purpose of § 3604(c) is to prevent expressions that result in the denial of housing, not to prevent all discriminatory expression." *Michigan Protection and Advocacy Service, Inc. v. Babin*, 799 F.Supp. 695, 716 (E.D. Mich. 1992). "Congress cannot legislate against the discriminatory comments of those powerless over the housing transaction at issue." *Id*.

"Congress intended to reach the activities of 'property owners, tract developers, real estate brokers, lending institutions, and all others engaged in the sale, rental, or financing of housing.'" *Woodward v. Bowers*, 630 F.Supp. 1205, 1209 (M.D. Pa. 1986), citing Hearings on S.3296 before the Subcommittee on Constitutional Rights of the Senate Committee on the Judiciary, 89th Cong., 2d Sess., pt. 1, at 84 (1966) (Attorney General Katzenbach's testimony).

Considering the legislative history and employing an ordinary reading of provision, the Court concludes that § 3604(c) of the Fair Housing Act does not apply to the City of Bedford in this case. REACH cannot prevail on this claim and Bedford is entitled to

summary judgment in its favor.

**Count III Constitutional Violations and Intentional Discrimination Claims**

REACH alleges that Bedford enacted a facially discriminatory Group Home Ordinance in an attempt to block REACH, and others, from opening and operating a group home for disabled children. From the time that REACH applied for a conditional use permit until 2017, Bedford's ordinance contained a restriction for group homes within 500 yards of a school, library or another group home. In Ordinance 1915.24, a "group home" is defined in part as "a dwelling shared by no more than eight ***handicapped persons***." (Emphasis added).

Following the amendment, 1915.24 still contains two additional restrictions which REACH alleges are illegally discriminatory and unconstitutional: (1) there will be no sign with the name of the home/business posted on site, nor will the address of the home be publicized in marketing materials, online or otherwise; and (2) should the property be sold or transferred to a new owner or business, the conditional use of the group home will not run with the land and the use will expire.

As previously outlined, REACH asserts a claim of intentional discrimination against Bedford, specifically alleging that Bedford has intentionally discriminated against REACH on the basis of disability through a pattern of conduct designed to interfere with REACH's efforts to operate a home for disabled children in Bedford. REACH alleges a pattern of harassment and obstruction. REACH contends that Bedford worked to forbid, delay and interfere with REACH's ability to open the home.

The parties do not dispute that in order to show disparate treatment, discriminatory intent or facial discrimination, a plaintiff must demonstrate that discriminatory purpose or

discriminatory animus was a motivating factor. *Smith & Lee v. City of Taylor*, 102 F.3d 781, 790 (6th Cir. 1996). Once REACH has done so, the burden shifts to Bedford "to prove that it would have made the same decision even if it had not been motivated by an unlawful purpose." *Id*. at 791.

REACH points to evidence that, in 2014, the Mayor of Bedford declared a moratorium on the opening of new homes for disabled people in the City. (See Plaintiff's Deposition Exhibit, ECF DKT #77-1). In response, Bedford argues: "While REACH insinuates that Bedford targeted disabled people, a review of the minutes from the City Council meeting paint a completely different picture. Instead of an animus against group homes and residents, statements from the meeting from Council members and the Mayor indicate support for the establishment of group homes." (Defendant's Reply Brief, ECF DKT #83 at p.6). REACH does not respond with any evidence countering the City's explanation or showing that the policy supporting group homes as discussed at the Council meeting was pretextual.

Bedford insists that the City acted without animus toward REACH when it granted REACH an accommodation and waived the radius restriction. REACH, for its part, asserts that its mission to help disabled individuals was frustrated by the delay and cost involved in obtaining the accommodation to locate near a school. (Affidavit of Executive Director Gerald Swartz, ECF DKT #80-1). According to REACH, Bedford's conduct stigmatized the Union Street Home's future residents. *Id*. The inspections of the Union Street Home by Calvin Beverly were overly strict and not in line with usual housing inspections. *Id*. The meetings with City officials concerning the occupancy permit were hostile. *Id*. The City's enforcement of its ordinance continues to be harassing and is intended to drive REACH out of

Bedford. *Id*. The Court finds genuine disputes exist as to the City's intent toward the opening and operating of a group home for disabled individuals.

Bedford acknowledges that REACH may argue that the zoning ordinance discriminates against disabled people by prohibiting signage on the site. However, the City Manager, Michael Mallis, testified that the sign restriction is consistent with all home businesses. (ECF DKT #72-4 at 109):

> I believe the signage, that's consistent with all home businesses in the city. I believe if somebody owns a landscape company out of their business [sic], they are not permitted to put a sign in their yard. If someone is an attorney or an accountant, they are not permitted to put a sign in their yard. So that's – consistent with all of the others.

This sworn testimony is sufficient to articulate a legitimate non-discriminatory reason for the City's sign restriction. Plaintiff has not provided evidence that home businesses, other than group homes, have been permitted to have signs or advertise online.

Another provision of the ordinance, which REACH contends is discriminatory toward REACH and the disabled individuals it serves, recites that should the property be sold or transferred to a new owner or business, the conditional use as a group home will expire and not run with the land. The City Law Director, John Montello, drafted the ordinance and testified on deposition that the City needs to know who the next owner would be for "health and safety reasons." (ECF DKT #72-5 at 165). Further, "[t]his is a safety issue, just to make sure we know what's going on in the house." *Id*. at 166. Such a generalized justification, without more, does not articulate a legitimate, non-discriminatory reason for the restrictive language, nor does it illustrate that it applies equally to any other transfer or sale of a property for commercial use in a residential zone.

Thus, Bedford is not entitled to summary judgment in its favor on the FHA discrimination claims in Count III of the Second Amended Complaint.

**CONCLUSION**

For these reasons, the Motion (ECF DKT #72) of Defendant City of Bedford for Summary Judgment is granted in part only, and the Motion (ECF DKT #80) of Plaintiff REACH Counseling Services for Partial Summary Judgment as to Liability is denied.

**IT IS SO ORDERED.**

                                        **s/ Christopher A. Boyko**
                                        **CHRISTOPHER A. BOYKO**
                                        **United States District Judge**

**Dated: October 29, 2018**